IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENE N. BARRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1403 |
| | § | |
| SCOTT M. FRESHOUR, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This case challenges an administrative subpoena used to seize patient records in a medical clinic suspected of operating as a "pain mill." The plaintiff, Dr. Gene N. Barry, is a licensed physician practicing medicine in Texas. He filed this suit under 42 U.S.C. § 1983 against Mari Robinson, the executive director of the Texas Medical Board; Anne Rauch, Mary Chapman, Debbi Henneke, and Belinda West, Board investigators; and Scott Freshour, the Board's general counsel, alleging Fourth Amendment violations. (Docket Entry Nos. 1, 12). The defendants filed a motion to dismiss. (Docket Entry No. 15). Based on the pleading, the record, the applicable law, and the arguments of counsel at an oral hearing, the motion is granted in part and denied in part for the reasons stated in detail below.

**I.     Background**

The following facts are alleged in Dr. Barry's complaint. On May 7, 2015, a Texas Medical Board employee signed executive director Mari Robinson's name on an administrative subpoena instanter addressed to Dr. Barry, covering patient records located at the Red Bluff Medical Clinic in Pasadena, Texas. (Docket Entry No. 12, at ¶ 13). Dr. Barry worked at the clinic part-time. *Id.*

1

at ¶ 25. That same day, Texas Medical Board investigators, including Rauch, Chapman, West, and Henneke, entered the clinic. They were accompanied by U.S. Drug Enforcement Administration agents, Texas Department of Public Safety officers, and Texas Board of Nursing investigators. *Id.* at ¶¶ 14–15. The Texas Medical Board investigators stated that they were in the clinic to do an investigation and instructed the Texas Department of Public Safety officers to turn off any security cameras, which they did. *Id.* at ¶ 19–21. Clinic staff turned the cameras back on, and the officers turned them off again, throughout the day, until the Texas Medical Board investigators forbade the clinic staff from going into the room where the cameras were located. *Id.* at ¶¶ 22–23.

Dr. Barry arrived shortly after the Texas Medical Board investigators entered the clinic. They presented him with the subpoena instanter directed to him. *Id.* at ¶ 24. He called his lawyer, Meagan Hassan, who arrived at the clinic an hour later. *Id.* at ¶¶ 26, 30. Hassan told the Texas Medical Board investigators, the Department of Public Safety officers, the Drug Enforcement Administration agents, and the Texas Board of Nursing investigators to leave immediately. *Id.* at ¶¶ 31–32. Most left, but Rauch stayed, insisting that she speak with Freshour, the general counsel of the Texas Medical Board. *Id.* at ¶ 34. Hassan called Freshour and demanded that he order the Board investigators to leave the clinic. *Id.* at ¶ 35. Freshour refused. *Id.* at ¶ 36. Hassan then demanded that the investigators show her what gave them authority to execute the subpoena as a search warrant. *Id.* at ¶ 39. In response, an investigator gave Hassan a copy of Texas Occupational Code § 153.007. *Id.* at ¶ 40. Section 153.007 states: "The board may issue a subpoena or a subpoena duces tecum to compel the attendance of a witness and the production of books, records, and documents. The board may administer oaths and take testimony regarding any matter within its jurisdiction." *Id.* § 153.007(a). The Texas Medical Board's implementing regulations interpret

§ 153.007 to require that:

> Upon the request by the board or board representatives, a licensee shall furnish to the board copies of medical records or the original records within a reasonable time period, as prescribed at the time of the request. "Reasonable time," as used in this section, shall mean fourteen calendar days or a shorter time if required by the urgency of the situation or the possibility that the records may be lost, damaged, or destroyed.

22 TEX. ADMIN. CODE § 179.4(a).

Hassan continued to protest that the Board was engaging in an illegal seizure. *Id.* at ¶ 43. The investigators responded that Department of Public Safety officers could detain the clinic administrator if she did not allow them access to the patient records. The investigators also insisted that they could go through all of the clinic's patient files, not only the ones specified in the subpoena instanter, if the clinic staff did not comply. *Id.* at ¶ 44. The clinic administrator subsequently directed the clinic staff to deliver any requested files to the Texas Medical Board investigators. *Id.* at ¶ 45.

The subpoena instanter did not identify the covered records by patient name. *Id.* at ¶ 47. Instead, the subpoena required:

> 2. Patient sign-in sheets or patient log for all patients evaluated from April 1, 2015 to April 30, 2015.
> 3. Copies of the corresponding exam and prescription for each patient identified in item #2.
> 4. Complete & accurate medical & billing records for a random sample of 15 patient records identified in item # 2.

*Id.* at ¶ 48.

The Texas Medical Board investigators did not randomly choose 15 patient medical and billing records to review and copy. *Id.* at ¶ 49. Instead, the investigators looked through the records of each patient evaluation and copied all that were incomplete or deficient. *Id.* at ¶ 49–50. Dr.

3

Barry does not allege that the investigators searched medical records of patients who were evaluated earlier than April 1, 2015 or later than April 30, 2015, the time period specified in the subpoena.

In this suit, Dr. Barry makes the following allegations:

- The Board investigators, Rauch, Chapman, West, and Henneke, violated the Fourth Amendment by searching and seizing his medical records, amounting to an unconstitutional abuse of process. (Docket Entry No. 12, at ¶¶ 97–92, 126–29, 145–53).

- Robinson, the executive director, West, a supervisor of the investigators, and Freshour, the general counsel, are liable because they directed or permitted the search and seizure and failed to supervise and train their employees in a manner reasonably calculated to prevent the unconstitutional abuse of process. *Id.* at ¶¶ 93–114, 130–33, 154–57.

- Freshour failed to protect Dr. Barry from the unconstitutional search, seizure, and abuse of process. *Id.* at ¶¶ 115–25, 134–37, 158–61.

- All the defendants violated or conspired to violate Dr. Barry's rights to procedural due process. *Id.* at ¶¶ 138–44.

The parties cited *Zadeh v. Robinson*, No. 1:15-cv-598-RP (W.D. Tex. 2016), a case with analogous facts and legal issues. Dr. Joseph Zadeh, a doctor practicing in Texas, was personally named in an action by the Texas Medical Board before the State Office of Administrative Hearings. (Docket Entry No. 40, at 1–2). Robinson signed an administrative subpoena for the patient medical records at Dr. Zadeh's clinic. *Id.* at 2. Like Dr. Barry, Dr. Zadeh was suspected of running an opioid pain mill. *Id.* at 14–17. Texas Medical Board investigators, accompanied by Drug Enforcement Administration investigators, gave the subpoena to Dr. Zadeh's medical assistant. *Id.* When the assistant asked to speak to Dr. Zadeh's attorney, she was told that Dr. Zadeh would lose

4

his medical license unless she turned over the records immediately. *Id.* The investigators searched, reviewed, and copied Dr. Zadeh's patient medical records. *Id.* He sued under § 1983, alleging Fourth Amendment violations. *Id.* at 2–3.

The defendants moved to dismiss Dr. Zadeh's complaint, arguing that: (1) Dr. Zadeh did not have standing; (2) the *Younger* abstention doctrine barred his claims; (3) Robinson had sovereign immunity in her official capacity; and (4) the defendants had qualified immunity in their individual capacities. *Id.* at 3. The defendants here raise the same arguments. The *Zadeh* court granted in part and denied in part the defendants' motion to dismiss. *Id.* at 25. The analysis in the opinion is useful and thorough, and this court uses a similar analysis and reaches a similar result.

## II. The Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Bloom v. Mem'l Hermann Hosp. Sys.*, 653 F. App'x 804, 805 (5th Cir. 2016). "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017).

The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself

5

as to the existence of its power to hear the case." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). The court has wide discretion to allow affidavits or other documents and to hold a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). The court may consider matters outside the pleadings to resolve factual challenges to subject-matter jurisdiction without converting the motion to dismiss to one for summary judgment. *See Battaglia v. United States*, 495 F. App'x 440, 441 (5th Cir. 2012).

### B. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). The Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.

A court considers the pleadings in deciding a motion for judgment on the pleadings, *see United States v. 0.073 acres of land, more or less, situate in Pars. of Orleans & Jefferson, Louisiana*, 705 F.3d 540, 543 (5th Cir. 2013), and "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's

complaint and are central to her claim." *See, e.g.*, *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 709 (5th Cir. 2016); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Exhibits attached to a complaint are part of the complaint "for all purposes." FED. R. CIV. P. 10(c); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) ("[I]t is not error to consider the exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion.").

## III. Analysis

### A. Standing

The defendants argue that Dr. Barry lacks standing to bring any of his claims because he has not demonstrated an injury in fact. (Docket Entry No. 15, at 4). The defendants point to the facts that Dr. Barry does not own the records that were searched or have an ownership interest in the clinic, where he worked part-time. *Id.*

Though Dr. Barry has no ownership interest in the clinic, one of the subpoenas was addressed to him, (Docket Entry No. 18-1, at 5), and he alleges that the records searched were his, *see, e.g.*, (Docket Entry No. 12, at ¶ 139). It is undisputed that Dr. Barry is personally named in the proceedings before the State Office of Administrative Hearings. (Docket Entry No. 15, at 8–9; Docket Entry No. 17, at 6–7). Because Dr. Barry alleges that the medical records were obtained illegally, and because they are being used against him in those proceedings, *id.* at 8–9, Dr. Barry has pleaded an injury sufficient for standing.

The defendants argue that the clinic administrator and the clinic owner's attorney consented to the search. *Id.*, at 4. But viewing the factual allegations in the light most favorable to Dr. Barry, he did not consent. Dr. Barry's counsel repeatedly demanded that the investigators not conduct the

search or seizure and instead leave the clinic. (Docket Entry No. 12, at ¶ 31). When the defendants refused, Dr. Barry's counsel continued to challenge the defendants' authority to execute the subpoena. *Id.* at ¶¶ 35–36, 39–43. The clinic administrator eventually complied with the investigators' orders, but not until they threatened to have her detained if she refused. *Id.* at ¶¶ 44–45. The allegations plead no effective, voluntary consent. *See United States v. Huerta*, 252 F. App'x 694, 696 (5th Cir. 2007) (the presence of threats is a factor weighing against finding valid consent).

The defendants also argue that Dr. Barry cannot raise claims that seizing the patient medical records violated the patients' privacy rights. (Docket Entry No. 15, at 5). To the extent that Dr. Barry asserts Fourth Amendment claims solely on his patients' behalf, those claims are dismissed. *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights ,may not be vicariously asserted." (quotation omitted)). But his claims that his own Fourth Amendment rights were violated are not dismissed. *See Zadeh*, No. 1:15-cv-598-RP (Docket Entry No. 40) (a doctor had standing when the Texas Medical Board searched and seized records in a similar manner and for similar purposes).

In *Zadeh*, the doctor owned the medical office that was searched, while Dr. Barry works at the Red Bluff Medical Clinic part-time and has no ownership interest in it. (Docket Entry No. 12, at ¶ 13). This fact is not critical to the standing issue, because the subpoena was directed to Dr. Barry himself. (Docket Entry No. 18-1, at 5).

The defendants also argue that Dr. Barry lacks standing because he has not adequately pleaded factual allegations showing a likelihood of future harm. (Docket Entry No. 15, at 5–6). As the defendants acknowledge, the redressability element is necessary only if the plaintiff seeks

declaratory relief. *See Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 563 (5th Cir. 1998). Dr. Barry seeks only monetary relief. (Docket Entry No. 12). He need not plead or show a likelihood of future harm to have standing. And even if he did seek declaratory relief, the pleading supports a "realistic likelihood" that the Texas Medical Board will seek to serve another administrative subpoena instanter on him, given the ongoing State Office of Administrative Hearings proceedings against him. *See Brown v. Edwards*, 721 F.2d 1442, 1447 (5th Cir. 1984).

The motion to dismiss for lack of standing is denied except as to claims asserted on behalf of the patients whose records were searched and seized.

    **B.**  *Younger* **Abstention**

The defendants also argue that the court should abstain from hearing Dr. Barry's claims under the *Younger* doctrine. (Docket Entry No. 15, at 8–10). *Younger* abstention might apply if Dr. Barry was seeking declaratory relief. *See Perez v. Texas Medical Board*, 556 F. App'x 341 (5th Cir. 2014). He does not. Because Dr. Barry seeks only monetary relief, (Docket Entry No. 12), *Younger* abstention is not a basis for dismissal. *Lewis v. Beddingfield*, 20 F.3d 123, 125 (5th Cir. 1994) (*Younger* abstention "is not applicable to a claim for damages").

    **C.**  **The Official Capacity Claims**

The defendants argue that Dr. Barry is barred from suing Mari Robinson in her official capacity, citing Eleventh Amendment immunity. (Docket Entry No. 15, at 6). Dr. Barry agrees and asks the court to strike claims against Robinson in her official capacity. (Docket Entry Nos. 17, at 13; 18, at 3). The amended complaint contains no claims against Robinson in her official capacity. (Docket Entry No. 12). Dr. Barry's request, and the motion to dismiss the official capacity claims, are both moot.

9

### D.  Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In reviewing a motion for summary judgment based on qualified immunity, [courts] undertake a two-step analysis." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014). "First, [courts] ask whether the facts, taken in the light most favorable to the plaintiffs, show the officer's conduct violated a federal constitutional or statutory right." *Id.* (citing *Tolan*, 134 S. Ct. at 1865). "Second, [courts] ask 'whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). "A court has discretion to decide which prong to consider first." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "Claims of qualified immunity must be evaluated in the light of what the officer knew at the time he acted, not on facts discovered subsequently." *Luna*, 773 F.3d at 718. But "[a]s the Supreme Court has recently reaffirmed, 'in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* (quoting *Tolan*, 134 S. Ct. at 1863).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009) (quotations omitted). "When considering a defendant's entitlement to qualified immunity, [a court] must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand

that what he is doing violates [the law].'" *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083, 2084 (2011)). "To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Id.* (quoting *Al-Kidd*, 131 S. Ct. at 2084).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quotations omitted). "[W]hile the Supreme Court has stated that 'courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case,' it has also recently reminded [courts] that [they] 'must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions.'" *Luna*, 773 F.3d at 724–25 (quoting *Tolan*, 134 S.Ct. at 1866). A plaintiff has the burden of overcoming the qualified immunity defense. *Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989).

The first step in the qualified immunity analysis is to determine whether Dr. Barry has alleged a Fourth Amendment violation. *See Luna*, 773 at 718; *Pearson*, 555 U.S. at 236 (asking first whether a right was violated "is often beneficial"). Under the Fourth Amendment, "searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are *per se* unreasonable . . . subject only to a few specifically established and well-delineated

exceptions." *Arizona v. Grant*, 556 U.S. 332, 338 (2009). One exception to the warrant requirement is the administrative search, in which "special needs . . . make the warrant and probably-cause requirement impracticable," and where "the 'primary purpose' of the searches is '[d]istinguishable from the general interest in crime control.'" *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015) (citations omitted); BARRY FRIEDMAN, UNWARRANTED: POLICING WITHOUT PERMISSION 162 (2017) ("Administrative searches are humdrum affairs that occur on a regular basis to make sure businesses are complying with applicable regulations.").

Although administrative searches may not require a warrant, "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* An exception to the exception exists for administrative searches of businesses participating in "closely regulated" industries that "have such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." *Id.* at 2454 (quoting *Marshall v. Barlow's Inc.*, 436 U.S. 307, 313 (1978)).

Under the "closely regulated" exception, a warrantless exception is reasonable if there is a "'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made," if the warrantless inspection is "necessary to further [the] regulatory scheme," and if "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." *New York v. Burger*, 482 U.S. 691, 702–3 (1987) (quotations omitted). To satisfy the "adequate substitute" prong, "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined

scope, and it must limit the discretion of the inspecting officers." *Id.* at 703. The Supreme Court has identified four "closely regulated" industries: liquor sales, firearms dealing, mining, and running automobile junkyards. *Patel*, 135 S. Ct. at 2454–55. The practice of medicine is not included in this list.

As the court in *Zadeh* persuasively concluded, the medical profession is not a "closely regulated" industry. The court explained that:

> While the practice of medicine is admittedly subject to significant oversight, there is no history of warrantless inspections of doctor's offices. In fact, the prevailing tradition is quite to the contrary. There is a long history of recognizing the need for privacy in the medical profession out of respect for doctor-patient confidentiality. It strains credibility to suggest that doctors and their patients have no reasonable expectation of privacy. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2668 (2011) (stipulating that "for many reasons, physicians have an interest in keeping their prescription decisions confidential"); *Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (acknowledging that a medical patient has a "reasonable expectation of privacy" and can assume that medical records "will not be shared with nonmedical personnel without her consent"); *In re Vioxx Products Liab. Litig.*, No. MDL 1657, 2005 WL 2036797, at *3-4 (E.D. La. July 22, 2005) (tracing the history of doctor-patient confidentiality to fifth century B.C. and arguing that the erosion of privacy protections in the medical field could reduce the quality of medical care). Thus, the Court concludes that the practice of medicine is not a closely regulated industry. *See Margaret S. v. Edwards*, 488 F. Supp. 181, 216-17 (E.D. La. 1980) (holding that "the health industry . . . is not a closely regulated industry" given the "history of respect towards the recognized need for privacy in the doctor-patient relationship").

*Zadeh*, No. 1:15-cv-598-RP (Docket Entry No. 40, at 10).

Because the "closely regulated" exception does not apply, the search and seizure of the patient medical records under the subpoena is constitutional only if Dr. Barry had "an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 135 S. Ct. at 2452. Dr. Barry adequately alleges facts that show that no such opportunity was provided. When his attorney arrived at the clinic, she demanded that the defendants stop their records search and leave the premises. (Docket Entry No. 12, at ¶ 31). The Board investigators refused. *Id.* at ¶¶ 35–36. Dr.

13

Barry's counsel consistently challenged their authority to execute the subpoena. *Id.* at ¶¶ 39–43. And it was only after the investigators threatened to detain the clinic administrator that she acquiesced and complied with their demands. *Id.* at ¶¶ 44–45. Dr. Barry had no opportunity to obtain precompliance review, because the subpoena was executed immediately after service despite his protest and refusal to consent.

The factual allegations support the first step in the analysis of whether qualified immunity applies. The second step asks "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Luna*, 773 F.3d at 718 (quotation omitted). The question here is whether the administrative search, without opportunity to obtain precompliance review, was "clearly and unambiguously prohibited." *Morgan*, 659 F.3d at 371–72.

The opportunity for precompliance review has long been a requirement of administrative searches. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415, 104 S. Ct. 769, 773, 78 L. Ed. 2d 567 (1984) ("Thus although our cases make it clear that the Secretary of Labor may issue an administrative subpoena without a warrant, they nonetheless provide protection for a subpoenaed employer by allowing him to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court."); *See v. City of Seattle*, 387 U.S. 541, 544–45 (1967). Because this controlling authority is longstanding, the defendant's alleged actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Luna*, 773 F.3d at 718.

Even if the medical profession was a "closely regulated" industry, *see Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629 (5th Cir. 2000) (the dental profession was a "closely

14

regulated" industry in a factually analogous case), Dr. Barry still alleges a constitutional violation that was clearly established when the search occurred. Under *Burger*, a regulatory statute that allows warrantless searches of a "closely regulated" industry must provide a "constitutionally adequate substitute for a warrant." 482 U.S. at 702–03. To be an "adequate substitute," the regulatory scheme authorizing administrative searches of "closely regulated" industry businesses must satisfy two fundamental functions of a warrant. It must "advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.* at 703.

The regulatory scheme governing the Texas Medical Board's subpoena authority fails both requirements. First, while the Texas Medical Board "may issue a subpoena or a subpoena duces tecum to compel the attendance of a witness and the production of books, records, and documents," Tex. Occ. Code § 153.007, the Board "is not authorized to physically search or inspect a doctor's office." *Zadeh*, No. 1:15-cv-598-RP (Docket Entry No. 40, at 13). The allegations that the Board investigators physically searched the clinic and Dr. Barry's records, if proven, show that the search went beyond authority granted to the Board under § 153.007. The regulatory scheme could not and did not put Dr. Barry on notice that his records would be searched in this unauthorized manner. Second, the regulatory scheme does not limit the Texas Medical Board's discretion. The statute imposes no restrictions on when and to whom subpoenas may be served. *See* TEX. OCC. CODE § 153.007.

The alleged search violates the Fourth Amendment even if the medical profession was a "closely regulated" industry. The defendants do not point to any law to dispute that the law on warrantless searches was clearly established at the time of the alleged search. *See Burger*, 482 U.S.

15

at 703; *Zadeh*, No. 1:15-cv-598-RP (Docket Entry No. 40, at 21–22) (rejecting the argument that *Ellis v. Mississippi Dep't of Health*, 344 F. App'x 43 (5th Cir. 2009) or *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629 (5th Cir.2000), made it ambiguous whether a regulatory scheme could serve as an adequate substitute for a warrant when the search goes beyond the authority granted by the regulatory scheme).

The motion to dismiss the individual capacity § 1983 claims for violating the Fourth Amendment is denied.

### E. Abuse-of-Process Claims

The defendants argue that Dr. Barry cannot allege claims for abuse of process, citing *Cevallos v. Silva*, 541 F. App'x 390, 394 (5th Cir. 2013) (per curiam). In *Cevallos*, the court held that an abuse-of-process claim "fail[s] as a matter of law unless founded in another constitutional right." *Id.* Dr. Barry alleges claims under the Fourth Amendment. He alleges that the defendants "intended the subpoena *instanter* to act as a 'sneak-and-peek subpoena' in order to gain warrantless access to Plaintiff's medical records over contemporaneous objections from Plaintiff's legal counsel for the express purpose of identifying which records should be searched and seized." (Docket Entry No. 12, at ¶ 148). Dr. Barry also alleges that the defendants "recklessly violated Plaintiff's clearly established constitutional rights to remain free from warrantless searches and seizures." *Id.* at ¶ 153(d). Dr. Barry's abuse-of-process claims are not "freestanding," *Cevallos*, 541 F. App'x at 394, but are instead founded in the Fourth Amendment. They are not dismissed.

### F. The Delegation-of-Subpoena-Authority Claims

Dr. Barry claims that Robinson "impermissibly re-delegated her subpoena and signature authority," and that Robinson, West, and Freshour caused Texas Medical Board personnel "to

16

believe that they were permitted to sign subpoenas *instanter* without Defendant Robinson's approval." (Docket Entry No. 12, at ¶¶ 94, 98, 102). The defendants argue that Texas law expressly authorizes Robinson to delegate signature authority. The defendants are correct. *See* 22 TEX. ADMIN. CODE § 161.7 ("The executive director may delegate any responsibility or authority to an employee of the board . . . ."). To the extent that Dr. Barry's supervisory liability claims rely on this improper-delegation argument, they are dismissed, with prejudice and without leave to amend, because amendment would be futile.

**IV. Conclusion**

The defendants' motion to dismiss, (Docket No. 15), is granted in part and denied in part. Dr. Barry's claims asserting only the Fourth Amendment rights of his patients are dismissed. His claims that the defendants violated his own Fourth Amendment rights are not dismissed. *Younger* abstention does not apply. The motion to dismiss the claims against Mari Robinson in her official capacity is moot. The defendants are not entitled to qualified immunity in their individual capacities. Dr. Barry's abuse-of-process claim is not dismissed. To the extent that Dr. Barry's claims rely on an improper-delegation argument, they are dismissed, with prejudice and without leave to amend.

SIGNED on October 18, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge